UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARTIN P. MOLER, ET AL.,

       Plaintiffs,

v.

               Civil No.: 1:21-cv-01824-JRR

UNIVERSITY OF MARYLAND
MEDICAL SYSTEM, ET AL.,

       Defendants.

## MEMORANDUM OPINION

This matter comes before the court on Defendants University of Maryland Medical System ("UMMS") and the Employee Benefits Committee's ("EBC") Motion to Dismiss Plaintiffs Martin P. Moler, Kathleen D'Ascenzo and John T. Czahor's Complaint. (ECF 35; the "Motion".) The court has reviewed all motions papers.[1] No hearing is necessary. Local Rule 105.6 (D. Md. 2021.)

**BACKGROUND**

Plaintiffs bring a class action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1109, 1132, for breach of fiduciary duties against Defendants UMMS and EBC on behalf of the UMMS 401(a) Defined Contribution Plan and the UMMS Voluntary 403(b) Plan (the "Plans"), themselves as individuals as well as all others with whom they are similarly situated. The Plans are defined contribution plans, which means that

---

[1] Plaintiffs filed a Motion to Strike (ECF 37) Exhibits D, G, and H of the Motion. In accordance with the court's memorandum opinion and order granting the Motion to Strike, the court has not considered these exhibits in evaluating and ruling on the instant Motion.

participants' retirement benefits are limited to the value of their individual investment accounts as determined by market performance.  Based on the Plans' assets, they are classified as "Large" plans in the defined contribution plan marketplace, *i.e.,* valued in the range of $200 Million to $1 Billion.  The asset strength of the Plans affords considerable bargaining power regarding the transaction and management fees and expenses charged against the Plans' participants.  Plans participants shoulder the risks and expenses associated with their individual investment accounts; the Plans fiduciaries to not bear or absorb investment related fees and expenses.

UMMS serves as the sponsor, administrator, and as a fiduciary of the Plans, and delegates certain administrative and investment duties to the EBC.  The EBC's members are appointed by UMMS to serve on the committee as fiduciaries to the Plans.  Defendants select investment options from which participants choose for their individual accounts.  Participants may also select funds made available through GoalMaker, Prudential Insurance Company's proprietary asset allocation service.  Participants' funds are invested using GoalMaker unless participants direct their contributions elsewhere.

Plaintiffs bring two claims for relief.  The first charges Defendants with breach of their fiduciary duties of "prudence."  Plaintiffs allege Defendants breached their fiduciary duties of prudence by 1) failure to investigate and select investment options based on investment merit considerations of cost and performance; 2) imprudent selection of underperforming investments; 3) failure to investigate and select lower-cost mutual fund share classes; 4) failure to monitor the Prudential Principal Preservation Separate Account ("PPSA"); 5) offering only one stable value fund (PPSA) despite a history of under-performance and excessive cost, and allowing GoalMaker to place substantial percentages of holdings into this fund; and 6) failure to monitor or control the Plans' recordkeeping and other administrative expenses.  Plaintiffs' second claim charges that

UMMS failed to "monitor" the EBC to ensure its members fulfilled their fiduciary duties to the Plans.

### STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly,* 550 U.S. at 556).  At the motion to dismiss stage, the court accepts as true all well-pled facts and all reasonable factual inferences are drawn in favor of the plaintiff.  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

The Supreme Court has held that, in applying the pleading standards of *Iqbal* and *Twombly*, ERISA inquiries are "context-specific."  *See Hughes v. Northwestern University*, 142 S. Ct. 737, 742 (2022) (vacating dismissal of ERISA action on a motion to dismiss for failure to state a claim, and holding that "[b]ecause the content of the duty of prudence turns on 'the circumstances…prevailing' at the time of the fiduciary acts, . . . the appropriate inquiry will necessarily be context specific") (quoting *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014) pertaining to  § 1104(a)(1)(B)).

Under ERISA, a fiduciary's duty is akin to the duty of a trust fiduciary.  *Tibble v. Edison Intern.*, 575 U.S. 523, 528-29 (2015).  To state an ERISA claim for a breach of a fiduciary duty, a "plaintiff must make a prima facie showing that the defendant acted as a fiduciary, breached its

fiduciary duties, and thereby caused a loss to the Plan." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citing *Pegram v. Herdrich,* 530 U.S. 211, 225–26 (2000)).   In other words, "a prospective plaintiff must show, through reasonable inferences from well-pleaded facts, that the fiduciary's choices did not meet ERISA's requirements. . . . [F]or a plaintiff relying on inferences from circumstantial allegations, this standard generally requires the plaintiff to allege facts, accepted as true, showing that a prudent fiduciary in like circumstances would have acted differently." *Pension Benefit Guaranty Corp. v. Morgan Stanley Investment Management Inc.*, 712 F.3d 705, 720 (2nd Cir. 2013). Further, "'if the court, based on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed,'" or "'that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident,'" a complaint will survive a motion to dismiss for failure to state a claim. *Sacerdote v. New York University*, 9 F.4th 95, 108 (2nd Cir. 2021) (quoting *Pension Benefit Guaranty Corp.*, 712 F.3d at 718).

## ANALYSIS

### I.   Share Classes

Plaintiffs allege that lower cost mutual fund share classes were available for the class period and were identical to the funds chosen, but for their cost. Plaintiffs also allege that the flawed fiduciary process employed by Defendants resulted in the selection of high-cost funds through GoalMaker, and that those funds performed poorly. *Id.*

While a fiduciary is not required to "scour the market to find and offer the cheapest possible fund," selecting higher-cost funds where other options exist can give rise to the inference "that the process was flawed," demonstrating imprudence. *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595-96 (8th Cir. 2009); *see also Davis*

*v. Washington University in St. Louis*, 960 F.3d 478, 483 (8th Cir. 2020) (inferring mismanagement and the possibility that the defendant "failed to pay close enough attention to available lower-cost alternatives," where less expensive funds were available).

Plaintiffs allege that of the 15 investment options for which lower-cost share classes were available, the less expensive options were the better options, and Defendants' failure to select those options raises the inference of imprudence.[2] *Braden,* 588 F.3d at 595-96.  Plaintiffs' complaint identifies the funds they allege were unreasonably expensive, the specific expense ratios for those funds, the expense ratios of lower-cost share classes, and compares the respective performance of the two share classes, as well as the 15 allegedly unreasonably expensive funds to other funds in the same Morningstar fund category.   Each of the lower-cost share classes cited by Plaintiffs provided superior performance.

Defendants assert that the cost difference that Plaintiffs complain of is reasonably explained by revenue sharing where "Defendants actively managed funds with revenue sharing that generated fees offsetting recordkeeping and administrative costs." (ECF. 35 p. 19.) Defendants aver further that the practice of revenue sharing allowed Defendants to defray recordkeeping fees and plan administrative costs. *Id; see Kendall v. Pharm. Prod. Dev., LLC*, No. 7:20-CV-71-D, 2021 U.S. Dist. LEXIS 61671 at \*20 (E.D. N.C. March 31, 2021) (finding that, where there were lower cost alternatives available, a court may consider any additional benefits offered by the higher cost choice to justify the choice).[3]  Defendants cite *White v. Chevron Corp.*

---

[2] Defendants quarrel with three examples provided by Plaintiffs.  (ECF 43.)  These fact-based arguments may refute the merits of Plaintiffs' charges, but on a 12(b)(6) motion to dismiss, Plaintiffs benefit from resolution of reasonable inferences in their favor.  Therefore, at this stage, Defendants' fact-based challenge to these examples does not diminish the inference of imprudence raised by Plaintiffs' allegations.

[3] This case, cited by Defendants, found that the complaint containing allegations similar to the instant complaint successfully stated a claim for a breach of fiduciary duty. 2021 U.S. Dist. LEXIS 61671 at \*20-21 ("Plaintiffs allege that lower cost share classes were available for several of the fund options, providing a chart comparing the less expensive alternatives, and alleging that the higher cost shares did not offer additional benefits to offset the higher costs.")

to support their argument. No. 16-cv-0793-PJH, 2017 U.S. Dist. LEXIS 83474 at *42 (N.D. Cal.

May 31, 2017).   This case is materially distinguished by the fact that the plaintiffs in *White*

acknowledged that the more expensive investment choice included recordkeeping services.  There

are no such allegations in this case.  Defendants also rely on two recently overturned district court

cases, which this court declines to follow.[4]   *Kong v. Trader Joe's Co.,* No. CV-20-05790 PA

(JEMX), 2020 WL 7062395, at *2 (C.D. Cal. Nov. 30, 2020), rev'd and remanded, No. 20-56415,

2022 WL 1125667 (9th Cir. Apr. 15, 2022); *Davis v. Salesforce.com, Inc.*, No. 20-CV-01753-

MMC, 2021 WL 1428259 (N.D. Cal. Apr. 15, 2021)[5], rev'd and remanded, No. 21-15867, 2022

WL 1055557  at *1 (9th Cir. Apr. 8, 2022) (finding the defendants' explanation of revenue sharing

for the higher cost selection "plausible," but "not sufficient at the pleading stage to render

plaintiffs' facially plausible allegations inadequate.")

   While Defendants provide an explanation for the choices made, Plaintiffs are not required

to rebut or overcome that explanation at the pleading stage.  *Braden,* 588 F.3d at 597 ("Certainly

appellees could have chosen funds with higher fees for various reasons, but this speculation is far

from the sort of concrete, obvious alternative explanation Braden would need to rebut in his

complaint.  Requiring a plaintiff to rule out every possible lawful explanation for the conduct he

challenges would invert the principle that the complaint is construed most favorably to the

nonmoving party") (internal citations omitted); *see also Sacerdote,* 9 F.4th at 108 (finding the

defendant's explanation "goes to the merits and is misplaced at this early stage") (internal citations

omitted).  Plaintiffs have alleged facts to support an inference of imprudence, as they have alleged

well-pled facts regarding performance of the chosen funds in comparison to the less-expensive

[4] These overturned cases also relied on *White*, rendering its application to the instant case dubious at best.
[5] Defendants do cite an earlier version of this case, No. 20-cv-01753-MMC, 2020 U.S. Dist. LEXIS 184283 (N.D. Cal. October 5, 2020), however, the analysis on the revenue sharing issue is identical in both cases.

funds, and superior performance of the less expensive choice.  These facts, assumed true, support

the inference that Defendants breached their fiduciary duty in selecting the higher-cost funds. The

Motion will be denied on these grounds.

## II.    Actively Managed Funds

A fiduciary has a continuing responsibility to "monitor investments and remove imprudent

ones." *Tibble v. Edison Intern.*, 575 U.S. 523, 530 (2015).  In particular, a fiduciary is charged

with continuous investigation of investments, where "the investments at issue were so plainly risky

at the relevant times that an adequate investigation would have revealed their imprudence, or that

a superior alternative investment was readily apparent." *Pension Benefit Guaranty Corp. v.*

*Morgan Stanley Investment Management Inc.*, 712 F.3d 705, 719 (2nd Cir. 2013).  Based on these

legal principles, Plaintiffs allege that Defendants breached their fiduciary duties in failing to

investigate and select lower cost alternative funds.[6]  Plaintiffs maintain that the actively managed

funds chosen by Defendants charged grossly excessive fees in comparison to other comparable or

superior alternatives and that those actively managed funds historically underperformed during the

relevant period.    Defendants correctly counter that a plaintiff may not rely on the benefit of

hindsight to state a claim, because a fiduciary's decisions are evaluated at the time they were made.

*See DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 424 (4th Cir. 2007) ("an investment's diminution

in value is neither necessary, nor sufficient, to demonstrate a violation of a fiduciary's ERISA

duties.")  The "ultimate outcome of an investment is not proof of imprudence." *Divane v.*

*Northwestern Univ.*, 953 F.3d 980, 992 (7th Cir. 2020), vacated on other grounds by *Hughes v.*

---

[6] Plaintiffs also allege that Defendants failed to investigate lower-cost collective trusts.  Defendants counter that this claim is without merit because the Internal Revenue Code prohibits 403(b) plans from holding collective trusts. (ECF 43.) I.R.C. § 403(b)(7)(A).  Plaintiffs failed to respond to this argument in their opposition effectively abandoning their claims based on the potential availability of collective trusts as preferred or better investments. *See Mentch v. Eastern Sav. Bank*, *FSB*, 949 F. Supp. 1236, 1246-47 (D. Md. 1997) (dismissing plaintiff's claim as abandoned "by failing to address that claim in her opposition to" defendant's motion).

*Northwestern University*, 142 S. Ct. 737 (2022) (quoting *DeBruyne v. Equitable Life Assurance Soc'y of the United States*, 920 F.2d 457, 465 (7th Cir. 1990)); *See also Jenkins v. Yager*, 444 F.3d 916, 926 (7th Cir. 2006) ("We have stated that investment losses are not proof that an investor violated his duty of care.")

Plaintiffs allege that the Plans' funds underperformed "not only cheaper comparator funds but also their benchmark indices over a 10-year period and 3 other funds underperformed for at least 5 years." (ECF 36 p. 24.)  Defendants protest that Plaintiffs' allegations impermissibly rely on hindsight, and urge that the proper inquiry is the decision-making process, rather than the result.[7]  They claim Plaintiffs cannot satisfy the pleading standards "by using cherry-picked comparators selected with the benefit of hindsight, as virtually any investment can be shown to 'underperform' at some point in time." (ECF 35 p. 22.)  The investments' long-term underperformance is categorically different than showing what a fiduciary should have done in hindsight.  *See Goodman v. Columbus Regional Healthcare System, Inc.*, No. 4:21-CV-15 (CDL), 2022 WL 228764, at *2 (M.D. Ga. January 25, 2022) ("the Court is satisfied that Plaintiffs state a plausible claim that continuing to offer underperforming mutual funds with excessive expense ratios despite a consistent history of underperformance would violate ERISA's duty of prudence.") Indeed, Plaintiffs allege that "Defendants ignored the prolonged periods of underperformance of numerous funds in the Plans." (ECF 36 p. 23.)  Plaintiffs' allegation is not that Defendants should have acted differently in hindsight; but rather that Defendants were aware of the funds'

---

[7] Defendants also argue that Plaintiffs provide no meaningful benchmark upon which to make comparisons.  The Eighth Circuit has required "a sound basis for comparison – a meaningful benchmark" to show that a prudent fiduciary "would have selected a different fund." *Meiners v. Wells Fargo & Company*, 898 F.3d 820, 822 (8th Cir. 2018). Plaintiffs have provided comparator funds in the same Morningstar category that use the same benchmark market index as the funds at issue.  The court is satisfied that the requirement of a meaningful benchmark has been met at the motion to dismiss stage. *See Vellali v. Yale University*, 308 F. Supp. 3d 673, 687-88 (D. Conn. 2018) (holding that the defendant's argument that the benchmarks used are not proper "is not appropriately addressed at the motion to dismiss stage.")

underperformance at the time and chose to ignore it. *See Garcia v. Alticor, Inc.,* No. 1:20-cv-1078, 2021 WL 5537520, at *7 (W.D. Mich. August 9, 2021) (rejecting a similar hindsight argument where "plaintiffs bring allegations that the committee failed for *years* to perform sufficient reviews or investigations into the Plan's performance. Thus, it is plausible that Defendants had access to performance data at various points throughout the relevant period, and Plaintiffs' allegation is that Defendants did not adequately consider that information. If this allegation is true, it is a breach of ERISA.")

Defendants cite a recent Sixth Circuit opinion in support of their contention that it was not imprudent to select actively managed funds. *Smith v. CommonSpirit Health*, No. 21-5964, 2022 U.S. App. LEXIS 17043 (6th Cir. June 21, 2022).  In *Smith,* the Sixth Circuit affirmed the district court's dismissal of plaintiff's complaint where the plaintiff had "not plausibly pleaded that this ERISA plan acted imprudently merely by offering actively managed funds in its mix of investment options." *Id*. at *10.  The Sixth Circuit reasoned:

> These claims require evidence that an investment was imprudent from the moment the administrator selected it, that the investment became imprudent over time, or that the investment was otherwise clearly unsuitable for the goals of the fund based on ongoing performance.  Merely pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision—largely a process-based inquiry—that breaches a fiduciary duty.

*Id*. at *13.   Here, Plaintiffs' allegations go beyond reliance upon other investments that outperformed the selected funds.  Plaintiffs complain that the funds at issue underperformed, using other investments as a comparator, and that Defendants' continued inclusion of the underperforming funds amounts to imprudence in violation of Defendants' duties. *See id.* ("We accept that pointing to an alternative course of action, say another fund the plan might have invested in, will often be necessary to show a fund acted imprudently.")   Plaintiffs' allegations

are far more robust than those in *Smith*, where Smith essentially rested on a thin charge that there may have been better options out there.

Defendants make several other arguments in support of dismissal of the claims involving underperforming funds. First, they argue that Plaintiffs' claims fail to support an inference of imprudence because most of the challenged funds outperformed their benchmarks and yielded positive returns. Next, they assert that, even if a fund underperforms, a fiduciary may properly retain an underperforming fund as part of a long-term investment strategy. The cases cited by Defendants in support of these propositions focus on short term underperformance; the allegations in the instant case concern long term underperformance. Defendants also argue that they did remove funds during the class period, demonstrating fiduciary prudence. These arguments proffered by Defendants are fact-based merits defenses not properly resolved on a motion to dismiss. *See Huang v. TriNet HR III, Inc.,* No. 8:20-CV-2293-VMC-TGW, 2022 WL 93571, at *6 (M.D. Fla. Jan. 10, 2022) (rejecting similar arguments as involving issues of fact, "which cannot be determined on a motion to dismiss.")

Plaintiffs point to similar funds with lower expense ratios than the Plans funds, comparing their performances up to a 10-year period. Assumed true, these facts support the inference that Defendants failed to monitor and remove these historically underperforming funds. The Motion will be denied on these grounds.

## III.    Stable Value Funds

Plaintiffs charge that Defendants' inclusion of Prudential's PPSA was imprudent. In particular, Plaintiffs take issue with the large fee of the fund in comparison to its minimal returns. Defendants argue that the comparisons provided by Plaintiffs are inapplicable and irrelevant because they compare different investment periods. They further argue that the proposed

comparators are not meaningful benchmarks because three of the comparators do not guarantee

principal or interest credits as the Plans' fund does; this, Defendants argue, constitutes a material

distinction.

Determination of the adequacy or sufficiency of comparable benchmarks is a fact-intensive

inquiry not properly resolved on a motion to dismiss, and one that may require expert opinion.

*Vellali v. Yale University*, 308 F. Supp. 3d 673, 687-88 (D. Conn. 2018); *Garcia v. Alticor, Inc.,*

No. 1:20-cv-1078, 2021 WL 5537520, at *7 (W.D. Mich. August 9, 2021.  Plaintiffs have properly

alleged a comparable benchmark upon which to analyze the performance of the stable value fund

for purposes of the complaint.  The complaint alleges facts to support the inference that the PPSA

underperformed during the relevant period and that a prudent investor would have removed the

fund from the Plan.  The Motion will be denied on these grounds.

## IV.    Recordkeeping

Plaintiffs claim that Defendants breached their fiduciary duty of prudence by failing to

monitor, manage and control the Plans' recordkeeping and administrative costs and expenses and

by failing to remain informed about fee trends in the marketplace.  Plaintiffs further claim that

Defendants failed to solicit bids, negotiate fees, cap revenue sharing payments, and "thus, caused

the Plans' participants to pay excessive recordkeeping fees." (ECF 36 p. 1.)  Defendants counter

that Plaintiffs fail to allege facts sufficient to show that the fees were excessive for the services

rendered.[8]  But Plaintiffs need not resolve this challenge to survive the Motion.  *Kruger v. Novant*

---

[8] To support this proposition Defendants cite *Young v. General Motors Inv. Management Corp.*, 325 Fed. App'x 31, 33 (2nd Cir. 2009), as well as cases that rely on *Young,* where the court applied the standard for excessive fee claims under the Investment Company Act.  This court declines to apply *Young* to Plaintiffs' ERISA based claims. *Jones v. Harris Associates L.P.*, 559 U.S. 335 (2010); *see also In re M&T Bank Corp. ERISA Litig.*, No. 16-CV-375 FPG, 2018 WL 4334807, at *n.10 (W.D.N.Y. Sept. 11, 2018) (explaining that "*Young* extrapolated this standard from the [ICA] and applied it to ERISA, but … the Supreme Court [in *Jones*] confirmed that the ICA's 'excessive relative to the services rendered' standard is 'tailored to the history, statutory scheme, and purposes of the ICA' … and not ERISA fiduciaries").

*Health, Inc.*, 131 F. Supp. 3d 470, 479 (M.D. N.C. 2015); *George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 800 (7th Cir. 2011).

Courts have considered the failure to monitor and control recordkeeping fees a breach of the fiduciary duty. *Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014); *Kruger,* 131 F. Supp. 3d at 479. Further, whether charged fees and the concomitant fiduciary monitoring amount to a breach of duty are questions not to be resolved on a motion to dismiss where the allegations state a sound claim.

Plaintiffs have stated sufficient allegations that Defendants failed to monitor fees, and that the fees were excessive and unreasonable, amounting to a breach of fiduciary duty. The Motion will be denied on these grounds.

## V.    Monitoring EBC

Plaintiffs claim UMMS breached its fiduciary duty by failing to monitor the EBC to ensure its members fulfilled their respective duties to the Plans and Plaintiffs. A failure to monitor claim does "not provide independent grounds for relief, but rather depend[s] upon the establishment of an underlying breach of fiduciary duty cognizable under ERISA." *In re Duke Energy ERISA Litig.*, 281 F. Supp. 2d 786, 795 (W.D. N.C. 2003).

Defendants argue that Plaintiffs did not sufficiently allege the EBC breached its fiduciary duties, as required to state a claim for failing to monitor. As set forth above, Plaintiffs' complaint alleges sufficient breaches of fiduciary duty by UMMS to support underlying imprudence as required for a failure to monitor claim. The Motion will be denied on these grounds.

**CONCLUSION**

For the reasons set forth herein, Defendant UMMS and the EBC's Motion to Dismiss Plaintiffs' Complaint will be denied. The court will issue an accompanying order in accordance with this memorandum opinion.

/S/

_____
Julie R. Rubin
United States District Judge
July  13, 2022