**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| MARTIN P. MOLER, JOHN T. CZAHOR, and KATHLEEN D'ASCENZO, individually and on behalf of participants and beneficiaries on behalf of the University of Maryland Medical System 401(a) Defined Contribution Plan and the UMMS Voluntary 403(b) Plan,<br><br>    Plaintiffs,<br><br>        v.<br><br>UNIVERSITY OF MARYLAND MEDICAL SYSTEM and EMPLOYEE BENEFITS COMMITTEE,<br><br>        Defendants. | Case No.: 1:21-cv-01824-JRR |

**PLAINTIFFS' UNOPPOSED MOTION FOR AN ORDER: PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT; CERTIFYING THE PROPOSED SETTLEMENT CLASS; APPOINTING CLASS COUNSEL; APPROVING THE FORM AND MANNER OF CLASS NOTICE; APPOINTING A SETTLEMENT ADMINISTRATOR; AND SCHEDULING A FINAL SETTLEMENT HEARING AND HEARING ON PLAINTIFFS' CASE CONTRIBUTION AWARDS AND ATTORNEYS' FEES AND EXPENSES**

Plaintiffs Martin P. Moler, John T. Czahor, and Kathleen D'Ascenzo (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, respectfully move this Honorable Court for an Order granting: (i) preliminarily approve the Class Action Settlement Agreement, described herein; (ii) certification of the proposed Class for settlement purposes; (iii) establishment of a plan for providing notice of the Settlement to Class Members; (iv) appointment of Class Counsel; (v) approval of the Settling Parties' selection of a Settlement Administrator; and (vi) the setting of a hearing for consideration of final approval of the Settlement and consideration of Lead Counsel's motion for a Case Contribution Award to Plaintiffs and an award of attorney's

fees and reimbursement of litigation expenses. Plaintiffs rely on the Memorandum of Law and Exhibits filed herewith.

Dated: December 10, 2023

Respectfully submitted,

EDELSON LECHTZIN LLP

*/s/Eric Lechtzin*
Eric Lechtzin (PA I.D. 62096)
Marc H. Edelson (PA I.D. 51834)
411 S. State Street, Suite N-300
Newtown, PA 18940
Telephone: (215) 867-2399
elechtzin@edelson-law.com
medelson@edelson-law.com

MCKAY LAW, LLC
Michael C. McKay*
5635 N. Scottsdale Road, Suite 117
Scottsdale, AZ 85250
Telephone: (480) 681-7000
mmckay@mckaylaw.us

TYCKO & ZAVAREEI LLP Andrea Gold
(Bar No. 18656)
2000 Pennsylvania Avenue NW
Suite 1010
Washington, DC 20036
Telephone: (202) 973-0900
agold@tzlegal.com

*Attorneys for Plaintiffs and the Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| MARTIN P. MOLER, JOHN T. CZAHOR, and KATHLEEN D'ASCENZO, individually and on behalf of participants and beneficiaries on behalf of the University of Maryland Medical System 401(a) Defined Contribution Plan and the UMMS Voluntary 403(b) Plan,<br><br>Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF MARYLAND MEDICAL SYSTEM and EMPLOYEE BENEFITS COMMITTEE,<br><br>Defendants. | Case No.: 1:21-cv-01824-JRR |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' UNOPPOSED MOTION FOR AN ORDER: PRELIMINARILY**
**APPROVING CLASS ACTION SETTLEMENT; CERTIFYING THE PROPOSED**
**SETTLEMENT CLASS; APPOINTING CLASS COUNSEL; APPROVING THE**
**FORM AND MANNER OF CLASS NOTICE; APPOINTING A SETTLEMENT**
**ADMINISTRATOR; AND SCHEDULING A FINAL SETTLEMENT HEARING AND**
**HEARING ON PLAINTIFFS' CASE CONTRIBUTION AWARDS AND**
**ATTORNEYS' FEES AND EXPENSES**

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | LITIGATION AND SETTLEMENT HISTORY | 2 |
| | A. Description of the Action | 2 |
| | B. Procedural Background | 5 |
| | C. Discovery | 5 |
| | D. Settlement Negotiations | 6 |
| | E. The Settlement Agreement | 6 |
| | 1. Benefits to the Settlement Class | 6 |
| | 2. Retention of an Independent Fiduciary | 8 |
| | 3. Attorney's Fees, Costs and Service Award for Plaintiffs | 8 |
| | 4. Release of Claims | 9 |
| | 5. Notice and Objections | 9 |
| III. | ARGUMENT | 10 |
| | A. The Settlement Class Meets All Requirements of 23(a) and (b)(1) and Should Be Certified | 10 |
| | B. The Settlement Agreement Should Be Preliminarily Approved By the Court | 17 |
| | C. The Court Should Appoint Plaintiffs' Counsel as Class Counsel | 23 |
| | D. The Proposed Class Notice Program Should Be Approved | 24 |
| | E. Proposed Schedule of Events | 27 |
| | F. A Final Fairness Hearing Should Be Scheduled | 28 |
| IV. | CONCLUSION | 29 |

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Baby Neal for & by Kanter v. Casey*,
  43 F.3d 48 (3d Cir. 1994) .................................................................................. 13

*Boyd v. Coventry Health Care Inc.*,
  299 F.R.D. 451 (D. Md. 2014) ...................................................................... 13, 14

*Bredbenner v. Liberty Travel, Inc.*,
  2010 WL 11693610 (D.N.J. Nov. 19, 2010) ....................................................... 14

*Cent. Wesleyan Coll. v. W.R. Grace & Co.*,
  6 F.3d 177 (4th Cir. 1993) ................................................................................. 11

*Curtis v. Genesis Eng'g Sols., Inc.*,
  2022 WL 1062024 (D. Md. Apr. 8, 2022) ........................................................... 17

*DiFelice v. U.S. Airways, Inc.*,
  235 F.R.D. 70 (E.D. Va. 2006) .......................................................................... 16

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) .......................................................................................... 26

*Glass Dimensions, Inc. v. State St. Bank & Tr. Co.*,
  285 F.R.D. 169 (D. Mass. 2012) ........................................................................ 13

*Grunewald v. Kasperbauer*,
  235 F.R.D. 599 (E.D. Pa. 2006) ......................................................................... 25

*Hochstadt v. Bos. Sci. Corp.*,
  708 F. Supp. 2d 95 (D. Mass. 2010) ................................................................... 15

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  855 F. Supp. 825 (E.D.N.C. 1994) ..................................................................... 19

*Hughes v. Nw. Univ.*,
  141 S. Ct. 2882 (2021) ......................................................................................... 5

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*,
  2019 WL 3183651 (D. Md. July 15, 2019) .......................................................... 19

*In re American Capital Shareholder Derivative Litigation*,
  2013 WL 3322294 ....................................................................................... 18, 22

*In re Glob. Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................. 16

*In re Ins. Brokerage Antitrust Litig.*,
    579 F.3d 241 (3d Cir. 2009) ........................................................... 21, 23

*In re Jiffy Lube Sec. Litig.*,
    1990 WL 39127 (D. Md. Jan. 2, 1990) ...................................................... 21

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
    2009 WL 331426 (D.N.J. Feb. 10, 2009) .................................................... 16

*In re MicroStrategy, Inc. Sec. Litig.*,
    148 F. Supp. 2d 654 (E.D. Va. 2001) ....................................................... 19

*In re Mid-Atl. Toyota Antitrust Litig.*,
    564 F. Supp. 1379 (D. Md. 1983) ........................................................... 18

*In re Nortel Networks Corp. ERISA Litig.*,
    2009 WL 3294827 (M.D. Tenn. Sept. 2, 2009) .............................................. 16

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450 (D.N.J. 1997) ............................................................ 14

*In re Schering Plough Corp. ERISA Litig.*,
    589 F.3d 585 (3d Cir. 2009) ............................................................... 15

*In re Tyco Int'l, Ltd.*,
    2006 WL 2349338 (D.N.H. Aug. 15, 2006) .................................................. 17

*In re Under Armour Sec. Litig.*,
    631 F. Supp. 3d 285 (D. Md. 2022) ........................................................ 11

*Jones v. NovaStar Fin., Inc.*,
    257 F.R.D. 181 (W.D. Mo. 2009) ........................................................... 16

*Kelly v. Johns Hopkins Univ.*,
    2020 WL 434473 (D. Md. Jan. 28, 2020) .................................................... 9

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) ....................................................................... 26

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ....................................................................... 15

*Rolland v. Cellucci*,
  191 F.R.D. 3 (D. Mass. 2000) ........................................................................... 19

*S.C. Nat. Bank v. Stone*,
  749 F. Supp. 1419 (D.S.C. 1990) ...................................................................... 17

*Sims v. BB&T Corp.*,
  No. 1:15-CV-732, 2019 U.S. Dist. LEXIS 75839 (M.D.N.C. May 6, 2019) ............................ 9

*Snider Int'l Corp. v. Town of Forest Heights, Md.*,
  739 F.3d 140 (4th Cir. 2014) ............................................................................ 26

*Stanford v. Foamex L.P.*,
  263 F.R.D. 156 (E.D. Pa. 2009) ........................................................................ 16

*Stegemann v. Gannett Co.*,
  2022 WL 17067496 (E.D. Va. Nov. 17, 2022) ...................................................... 16

*All. To End Repression v. City of Chicago*,
  561 F. Supp. 537 (N.D. Ill. 1982) ...................................................................... 19

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................... 11, 12

*Williams v. First Nat. Bank*,
  216 U.S. 582 (1910) ........................................................................................ 17

*Yates v. NewRez LLC*,
  2023 WL 5108803 (D. Md. Aug. 9, 2023) ............................................................ 12

*Zimmer Paper Prod., Inc. v. Berger & Montague, P.C.*,
  758 F.2d 86 (3d Cir. 1985) .............................................................................. 25

**Statutes**

29 U.S.C. § 1000 ............................................................................................. 1

**Other Authorities**

4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 11:41 (4th ed. 2010) ............. 20

Manual for Complex Litigation (Fourth), §21.632 (2004) ........................................... 18

Prohibited Transaction Exemption 2003-39,
  68 FR 75632 (Dec. 31, 2003) ............................................................................ 1

## I.    __INTRODUCTION__

After vigorous advocacy and negotiation, Plaintiffs Martin P. Moler, John T. Czahor, and Kathleen D'Ascenzo (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, and Defendants University of Maryland Medical System and Employee Benefits Committee (collectively "Defendants) entered into a Class Action Settlement (the "Settlement") to resolve the claims under the Employee Retirement Income Security Act, 29 U.S.C. § 1000 *et seq.* ("ERISA") that Plaintiffs alleged in their Complaint. Defendants agreed to pay $3.25 million in cash to resolve Plaintiffs' claims. The Settlement Agreement, with exhibits, is submitted as Exhibit 1 to the Declaration of Eric Lechtzin. As required by Prohibited Transaction Exemption 2003-39, 68 FR 75632 (Dec. 31, 2003), an independent fiduciary – Fiduciary Counselors Inc. – will review the terms of the proposed Settlement and determine whether to authorize the proposed Settlement on behalf of the Plan, including the release of the Defendants and the Plan fiduciaries from the Released Claims, as that term is defined in the Settlement Agreement.

Plaintiffs respectfully submit this Memorandum of Law in support of their unopposed motion for entry of an Order that will: (i) preliminarily approve the proposed Settlement, which provides on behalf of the Class the $3.25 million Settlement Amount[1]; (ii) certify the proposed Class for settlement purposes; (iii) establish a plan for providing notice of the Settlement to Class Members; (iv) appoint Class Counsel; (v) approve the Settling Parties' selection of a Settlement Administrator; and (vi) set a hearing for consideration of final approval of the Settlement and consideration of Lead Counsel's motion for a Case Contribution Award to Plaintiffs and an award of attorney's fees and reimbursement of litigation expenses.

---

[1] All capitalized terms used herein shall have the meaning ascribed to them in the Settlement Agreement dated December 8, 2023 (the "Settlement Agreement") entered between Plaintiffs and Defendants.

The proposed Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class. It provides a substantial and immediate benefit to them in the form of a $3.25 million cash payment. It is the product of vigorous litigation, which included motion practice, exchange and review of key documents, expert damages analyses, and arm's-length negotiations between experienced counsel directed by a seasoned and respected Mediator, Robert Meyer, JAMS. The benefit of the proposed Settlement must be considered in the context of the risk that, in its absence, protracted litigation might lead to little or even no recovery on behalf of the proposed Settlement Class. Defendants mounted a vigorous defense at the early stages of the litigation, and Plaintiffs expect that Defendants would have continued to do so during discovery, trial and appeals.

In negotiating and finalizing the terms of the Settlement Agreement, Class Counsel have concluded that the Settlement is in the best interests of the Settlement Class in light of, among other considerations: (1) the substantial monetary relief afforded to the Settlement Class; (2) the risks and uncertainties of complex litigation such as this action; (3) the expense and length of time necessary to prosecute this action through trial and any subsequent appeals; and (4) the desirability of consummating the Settlement Agreement promptly in order to provide effective relief to the Settlement Class. In light of these factors, and as discussed further below, Plaintiffs believe that the proposed Settlement is fair and reasonable, and thus, merits preliminary approval.

## II.    LITIGATION AND SETTLEMENT HISTORY

### A.    Description of the Action

On July 22, 2021, Plaintiffs commenced this action by filing a class action complaint in this Court. (ECF No. 1.) Plaintiffs are participants in the University of Maryland Medical System 401(a) Defined Contribution Plan and the UMMS Voluntary 403(b) Plan (collectively, the "Plans"). The Plans are defined contribution plans: a 401(a) plan and 403(b) plan. ¶ 1. As of

December 31, 2020, the 403(b) Plan had 9,500 participants with account balances, and net assets of $754,881,906. *See* 403(b) Form 5500 for 2020. As of December 31, 2020, the 401(a) Plan had 11,700 participants with account balances, and net assets of $463,330,987. ¶¶ 8, 38-39. Defendants are fiduciaries of the Plans and had responsibility for selecting and regularly monitoring the Plan's investments, and monitoring and controlling administrative fees. ¶¶ 29-33, 36.

### 1.    GoalMaker

The Complaint alleges that the default investment option for the Plans was "GoalMaker," Prudential's proprietary optional asset allocation service. ¶¶ 24-5, 41, 45. That means participants' contributions are automatically invested using GoalMaker unless participants direct their contributions to another investment. ¶ 45. GoalMaker makes investments for participants from the GoalMaker menu and rebalances them on a quarterly basis. ¶ 42. Plaintiffs allege that GoalMaker is designed to funnel participants' savings into expensive and poorly performing investments that paid kickbacks to Prudential. ¶¶ 43-44. Plaintiffs further allege that selecting and retaining GoalMaker was imprudent due to its preference for funds with high expense ratios as compared to other strategies, which would have directed assets to better investment alternatives. ¶ 47. The inclusion and designation of GoalMaker as the Plans' default investment caused participants to pay excessive investment management fees and administrative expenses, which over the Class Period cost participants millions of dollars in retirement savings. ¶ 48.  Defendants dispute all of these allegations.

### 2.    Share Class Costs

Plaintiffs allege that, despite the Plans' large size and ability to qualify for the lowest-cost share class of most funds offered by the Plans, the Plans instead included higher-cost shares. The Complaint identifies 15 of the Plans' funds that were allegedly available in a lower-cost share

class, which were identical to the in-Plan funds in every way except for their lower cost and better performance. ¶ 115. While Defendants contend that the higher-cost share classes enabled the Plans to defray some administrative costs through revenue sharing, Plaintiffs allege that the value of such administrative costs did not outweigh the excessive payments made to Prudential and the opportunity cost to Plaintiffs of investing that money. ¶ 123.

### 3.    Investment Fees and Performance

Plaintiffs allege that the Plans are dominated by high-cost funds that charged grossly excessive fees. ¶¶ 124-125. Specifically, 15 out of the 19 funds in the Plans were significantly more expensive than comparable funds found in similar sized plans. ¶ 126. The expense ratios for the funds in the Plans range from 15%-3000% greater than expense ratios for comparable funds that were available to the Plans. *Id.*

Plaintiffs also allege that Defendants failed to regularly analyze the plan's investment options to determine whether its actively managed funds outperformed their respective benchmarks, net of fees. ¶ 128. Had Defendants conducted such an analysis, they would have determined that numerous funds in the Plans underperformed their respective fund categories' benchmarks over extended periods. ¶130. Defendants' failure to remove these underperforming investments demonstrates the absence of a prudent process to evaluate the Plans' investment offerings. ¶ 131.  Defendants deny these claims as well.

### 4.    Recordkeeping Fees

Finally, Plaintiffs allege Defendants failed to monitor the Plan's recordkeeping costs and seek competitive pricing for record keeping at the expense of the Plan's participants. As a result, the amount of recordkeeping and administrative fees paid during the Class period was excessive and unreasonable. While recordkeeping fees for plans with similar assets should have been

between $30 and $40 per participant at the beginning of the Class Period, and lower in ensuing years due to the trend towards lower recordkeeping and administrative expenses in the market. In 2018, the Plans' participants paid over $124 for such services and in 2019 the Plans' participants paid over $85 for such services. ¶¶ 192-94.

Defendants deny vigorously all allegations of the Complaint.

### B.   <u>Procedural Background</u>

On October 15, 2021, Defendants filed a Motion to Dismiss the Complaint. ECF No. 29. On November 18, 2021, Defendants filed a Motion to Stay pending the United States Supreme Court's decision in *Hughes v. Nw. Univ.*, 141 S. Ct. 2882 (2021). ECF No. 30. The Court granted this motion. ECF No. 31. On February 7, 2022, the parties filed a Joint Status Report to notify the Court of the Supreme Court decision in *Hughes v. Nw. Univ.* ECF No. 33. On March 24, 2022, Defendants filed an updated Motion to Dismiss. ECF No. 35. After the motion was fully briefed, on July 13, 2022, the Court issued a Memorandum Opinion that denied Defendants' motion to dismiss in its entirety. (ECF No. 51) On August 8, 2022, Defendants filed an answer to the Amended Complaint with Affirmative Defenses. (ECF No. 55) Thereafter, the parties participated in a Rule 26(f) planning meeting and submitted a report regarding the same (ECF No. 56) and stipulated to the confidentiality of certain discovery (ECF No. 58). The Settling Parties subsequently filed a joint motion to stay all deadlines and proceedings in an attempt to resolve the matter. (ECF No. 76).

### C.   <u>Discovery</u>

Following Defendants' Answer, Defendants provided Plaintiffs with extensive relevant documentation, including meeting minutes and materials considered by the benefit of the investment committees, and copies of information made available to the Plans' participants

concerning investment options. Plaintiffs retained an expert who meticulously reviewed the materials and calculated a damage estimate based on Plaintiffs' claims in the case.

### D.    Settlement Negotiations

After Plaintiffs and their expert prepared detailed damage analysis and the parties submitted detailed mediation statements, which included arguments and analyses of the strengths and weaknesses of their respective positions, the parties participated in an in-person mediation with Robert A. Meyer of JAMS on September 19, 2023, in Miami, Florida. Although the parties did not reach an agreement at the mediation, negotiations facilitated by Mr. Meyer continued during the ensuing weeks and, on October 12, 2023, the parties reached an agreement in principle on all material terms of the Settlement. Thereafter, the Parties negotiated the detailed terms of the Settlement Agreement and exhibits thereto, for which Plaintiffs now seek preliminary approval.

### E.    The Settlement Agreement

#### 1.    Benefits to the Settlement Class

The Settlement Agreement establishes a Settlement Amount of $3.25 million as compensation to the Settlement Class to compensate them for the Defendants' alleged fiduciary breaches.

Under the terms of the Settlement Agreement, within thirty (30) calendar days after the later of (a) the date the Court enters a Preliminary Approval Order, or (b) the date the Qualified Settlement Fund is established and the Settlement Administrator (or Class Counsel) has furnished to Defendants and/or Defense Counsel in writing the Qualified Settlement Fund name, IRS W-9 Form, and all necessary wiring instructions, then Defendants will cause $100,000 to be deposited into the Qualified Settlement Fund as the first installment of the Gross Settlement Amount. (Settlement Agreement ¶ 4.4). Within thirty (30) business days after the Settlement Effective Date,

the remainder of the Gross Settlement Amount, three million, one hundred and fifteen thousand dollars ($3,150,000), will be deposited into the Qualified Settlement Fund. (*Id.* ¶ 4.5).

The Settlement Amount will be used to cover all the administrative costs associated with providing notice to the Class and implementing the Settlement; attorney's fees and costs as approved by the Court; the Case Contribution Awards for Plaintiffs as approved by the Court; the Independent Fiduciary's fees and expenses up to a cap of $20,000; and any applicable taxes. *Id.* ¶¶ 5.1, 5.2. Less these amounts, the Net Settlement Amount will be distributed to members of the Settlement Class pursuant to the terms of the Settlement Agreement and the proposed Plan of Allocation. *Id.* ¶ 5.3. The Settlement Administrator will be responsible for calculating the amounts payable to Members of the Settlement Class pursuant to the Plan of Allocation. *Id.*, ¶¶ 5.3, 8.2.1., 8.2.2.

For Class Members who have Plan accounts as of the date of the distribution of the Net Settlement Amount, the distribution will be made pursuant to applicable Plan terms. *Id.* ¶ 5.3. For those Members of the Settlement Class who no longer have an account in the Plan as of the time of distribution, defined in the Settlement Agreement as a Former Participant, their distributions will be made by checks written to each Former Participant from the Settlement Administrator. No Former Participant whose entitlement to payment pursuant to the Plan of Allocation would be otherwise less than twenty-five dollars ($25) shall receive any payment.

Pursuant to the terms of the Settlement Agreement, the cash payment will be made to Members of the Settlement Class who meet the Class definition, without the need for submitting a claim form or other request for payment. The Settlement Agreement does not provide for a "claims made" Settlement, or for any "reversion" of the Settlement Fund to Defendants or any of their affiliates.

### 2.    __Retention of an Independent Fiduciary__

Defendants have selected Fiduciary Counselors Inc. as an Independent Fiduciary to review and consider the Settlement on behalf of the Plan and determine if the Settlement is reasonable and fair. *Id.* ¶ 2.1 All fees and expenses associated with the Independent Fiduciary's determination and performance of its other obligations in connection with the Settlement, up to $20,000, will constitute Administrative Expenses to be deducted from the Gross Settlement Amount and will be paid by the Settlement Administrator. *Id.* ¶ 2.1.3. The Settlement Agreement provides that the Independent Fiduciary shall notify Defendants directly of its determination, in writing (with copies to Class Counsel and Defense Counsel), no later than 10 calendar days after Class Counsel file their application for attorney's fees and costs with the Court. *Id.* ¶ 2.1.2. A copy of the Independent Fiduciary determination letter and report shall be provided to Class Counsel, who may file it with the Court in support of Final approval of the Settlement. *Id.* ¶ 2.1.6.

Accordingly, the Settlement will be evaluated by an independent fiduciary whose sole loyalty is to the Settlement Class, and that fiduciary will evaluate the Settlement as to whether it is: (1) reasonable and fair in the light of the litigation risk and the value of the claims; (2) consistent with an arm's length agreement; and (3) not part of an agreement or arrangement to benefit a party in interest. The Independent Fiduciary will also review the Settlement to ensure it is in accordance with Prohibited Transaction Class Exception 2003-39 and to evaluate whether the Settlement does not constitute a prohibited transaction under ERISA § 406(a).

### 3.    __Attorney's Fees, Costs and Service Award for Plaintiffs__

Plaintiffs' Counsel's fees, litigation costs, and Plaintiffs' Case Contribution Awards will be paid from the Settlement Amount, as the Court may so order. *Id.* ¶ 6.1. Class Counsel will petition the Court for an award of attorney's fees not to exceed one-third (1/3) of the Gross Settlement Amount, plus costs (*Id.*) prior to the hearing on final approval of the settlement, but

they note now that a one-third fee is commonly awarded in ERISA class actions such as this. *See Kelly v. Johns Hopkins Univ.*, No. 1:16-CV-2835-GLR, 2020 WL 434473, at *3 (D. Md. Jan. 28, 2020) (in "ERISA excessive fee cases…courts have consistently recognized that a one-third fee is the market rate").

Class Counsel also will petition the Court for a Case Contribution Award not to exceed $7,500.00 per Plaintiff in recognition of the service of Plaintiffs. All requests will be subject to Court approval. *Id.* ¶ 1.8. This request is in line with service awards approved by courts in this Circuit in similar cases, which recognize the valuable contributions Class Representatives make to actions such as this that benefit the Class as a whole. *Kelly*, 2020 WL 434473, at *7–8 (approving $20,000 service awards to each of eight class representatives in similar ERISA class action); *Sims v. BB&T Corp.*, No. 1:15-CV-732, 2019 U.S. Dist. LEXIS 75839 at *18 (M.D.N.C. May 6, 2019) (approving $20,000 service awards to each of ten class representatives in similar ERISA proprietary fund class action).

### 4.    Release of Claims

Under the terms of the Settlement Agreement, Plaintiffs, the Members of the Settlement Class, and the Plan (by and through the Independent Fiduciary) shall release any and all claims, including all claims asserted or that could have been asserted in the Class Action. *Id.* ¶¶ 1.37, 7.1. The full scope of the Settling Parties releases is set forth in the Settlement Agreement at ¶¶ 1.37, 7.1-7.6.

### 5.    Notice and Objections

Pursuant to Fed. R. Civ. P. 23(e)(1) and (e)(5), the Settlement Agreement provides for notice to the Settlement Class and an opportunity for Members of the Settlement Class to object to approval of the Settlement. (Settlement Agreement at ¶ 2.2.7) The Settling Parties have agreed, subject to Court approval, to a notice plan that will provide the Settlement Class with sufficient

information to make an informed decision about whether to object to the proposed Settlement. The proposed Settlement Notice procedure includes direct mailing of the Settlement Notice (attached as Exhibit A to the Settlement Agreement), to the last known mailing address of each Member of the Settlement Class, which will be supplied by Defendants. The Notice will inform the Settlement Class of the nature of the action, the litigation background and the terms of the Settlement Agreement, including the definition of the Settlement Class, the relief provided, the intent of Class Counsel to seek fees and costs, the proposed Case Contribution Awards payable to Plaintiffs, and the scope of the release and binding nature of the Settlement on Members of the Settlement Class. It also describes the procedure for objecting to the Settlement and states the date, time and place of the final fairness hearing. Exhibit A to the Settlement Agreement. The Settlement Agreement also provides that the Settlement Administrator shall establish a Settlement Website that will include, among other documents, the Notice, the Settlement Agreement and its exhibits. Settlement Agreement at ¶ 13.2.

## III.    <u>ARGUMENT</u>

### A.    <u>The Settlement Class Meets All Requirements of 23(a) and (b)(1) and Should Be Certified</u>

In connection with preliminary approval of the Settlement, Plaintiffs seek class certification for settlement purposes only, and Defendants do not object to, certification of the Settlement Class defined as follows:

> All persons who were participants in or beneficiaries of the Plans, at any time between July 1, 2015 and December 31, 2023 (the "Class Period").

In order to certify the Settlement Class, Plaintiffs must satisfy each of the four elements of Rule 23(a), and one or more of the requirements of Rule 23(b).

### 1.    **Rule 23(a) Requirements Are Satisfied Here**

In order to certify a class under Rule 23, a named plaintiff must establish that the class meets each of the four requirements of subsection (a) of the Rule which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These four elements are referred to in the shorthand as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Here, all four elements are satisfied for the purpose of certifying the proposed settlement class.

### a.     23(a)(1) – "Numerosity"

The proposed Settlement Class is sufficiently numerous. Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23. "Classes of as few as 25 to 30 have been found to raise the presumption that joinder would be impracticable" *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d 285, 300 (D. Md. 2022) (internal citation and quotations omitted); *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 183 (4th Cir. 1993) (noting district court's finding "that some 480 potential class members would easily satisfy the numerosity requirement"). Here, the 403(b) Plan had 9,500 participants and the 401(a) Plan had 11,700 participants as of December 31, 2020. ¶¶ 8, 38-39. Thus, the joinder of all Class members is impracticable, and numerosity is satisfied.

### b.     Rule 23(a)(2) – "Commonality"

The Settlement Class satisfies the commonality requirement. *See generally Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Rule 23(a)(2) requires that there be "questions of law or fact common to the class," and that the class members "have suffered the same injury." *Wal-Mart Stores, Inc.*, 564 U.S. 338. A single common question is sufficient to satisfy the requirements

of Rule 23(a)(2). *See Yates v. NewRez LLC*, No. CV TDC-21-3044, 2023 WL 5108803, at *6 (D. Md. Aug. 9, 2023) ("the commonality requirement can be met when there is even a single common question of law or fact shared by the named plaintiff and the putative class."); *see also* 1 A. Conte & H. Newberg, *Newberg on Class Actions (Fourth)*, § 3.10 at 272-74 (2002).

In this case, the commonality requirement is readily satisfied because Plaintiffs' allegations arise from the same common nucleus of operative facts, and all members of the proposed Settlement Class will cite the same common evidence to prove their identical claims. Thus, in this case, a "classwide proceeding [will] generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc.*, 564 U.S. 338. Under these circumstances, commonality is easily satisfied. The legal and factual questions linking Members of the Settlement Class are unquestionably related to the resolution of the litigation of every Class Member's claims. Common questions of law and fact are presented about whether Defendant breached its fiduciary duties concerning the Plans' investment options. The many questions of law and fact common to the Class (and the nature of the common evidence used to prove these elements of the claims) include:

    (a)    Whether Defendants are fiduciaries of the Plans;

    (b)    Whether Defendants breached their fiduciary duties of loyalty and prudence by engaging in the conduct described in the Complaint;

    (c)    Whether the Board Defendants failed to adequately monitor the Plan Committee and other fiduciaries to ensure the Plan was being managed in compliance with ERISA;

    (d)    Whether Defendant's actions proximately caused losses to the Plans and, if so, the appropriate equitable, injunctive and monetary relief to which the Plans are entitled.

These are the core issues in this case and the alleged bases for the harms that unify all Members of the Settlement Class. Defendants' alleged conduct impacted Members of the Settlement Class in precisely the same way. Classes consisting of ERISA plan participants are

routinely certified in this and other courts. *See, e.g.*, *Glass Dimensions, Inc. v. State St. Bank & Tr. Co.*, 285 F.R.D. 169, 178 (D. Mass. 2012) (commonality requirement satisfied and class certified where there existed a common question as to whether managers reasonably charged each of the plans a fee of 50% of the income earned from funds' securities lending).

Thus, the commonality requirement is readily satisfied for the Class.

c.    Rule 23(a)(3) – "Typicality"

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. FED. R. CIV. P. 23. Whereas commonality evaluates the sufficiency of the class, typicality judges the sufficiency of the named plaintiffs as representatives of the class. *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994). A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class. *See Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 458 (D. Md. 2014) ("The typicality requirement focuses on 'whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.'") "[A] plaintiff's claim may factually differ and still be 'typical' of class member claims, if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Boyd*, 299 F.R.D. 451 (quotations omitted).

Here, Plaintiffs have the same claims for breach of fiduciary duties under ERISA as the other members of the Class. Like other members of the Class, Plaintiffs: (1) seek relief for the same losses, (2) caused by the same alleged breaches of fiduciary duties, (3) affecting the same Plan. Thus, the typicality requirement is satisfied.

13

      d.      <u>Rule 23(a)(4) – "Adequacy"</u>

The final requirement of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23. To evaluate adequacy, the Court considers whether "(1) the named plaintiff's interests are not opposed to those of other class members, and (2) the plaintiff's attorneys are qualified, experienced, and capable." *Boyd*, 299 F.R.D. at 459.

First, Plaintiffs have no interests adverse or "antagonistic" to absent Class Members. Plaintiffs are participants in the Plan and allegedly suffered a *pro rata* loss as a result of Defendants' alleged fiduciary breaches with regard to: (1) failing to objectively and adequately review the Plans' investment portfolio with due care to ensure that each investment option was prudent, in terms of cost and performance; (2) maintaining certain funds in the Plan despite the availability of identical or similar investment options with lower costs and/or better performance histories; and (3) incurring excessive recordkeeping fees. Like other members of the Class, the proposed Class Representatives seek to maximize the recovery to the Class through this litigation. As such, Plaintiffs' interests are perfectly aligned with the interests of the absent Class Members, thereby meeting the first adequacy prong.

Second, as discussed below, the proposed Class Representatives have retained counsel with significant experience in federal class actions, and in particular, ERISA cases. *See Bredbenner v. Liberty Travel, Inc.*, No. 09-CV-905 (WJM) (ME), 2010 WL 11693610, at *4 (D.N.J. Nov. 19, 2010) ("Plaintiffs' attorneys are qualified, experienced, and generally able to conduct the proposed litigation…"); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 519 (D.N.J. 1997) ("Plaintiffs' team of legal counsel is comprised of preeminent class action attorneys from

throughout the country, many of whom have been qualified as lead counsel in other nationwide class actions.") Thus, Plaintiffs are adequate representatives of the proposed Settlement Class.

    2.    **The Proposed Settlement Class Should Be Certified Under Rule 23(b)**

Fed. R. Civ. P. 23(b)(1)(B) provides that a class may be certified where "prosecuting separate actions by … individual class members would create a risk of … adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). As the Supreme Court has explained, Rule 23(b)(1)(B) applies where "the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999). "Classic examples" of suits appropriate for class resolution under Rule 23(b)(1)(B) classes include "actions charging a breach of trust by a … fiduciary similarly affecting the members of a large class of beneficiaries, requiring an accounting or similar procedure to restore the subject of the trust." *Id.*

Not surprisingly, therefore, "[i]n light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held." *See Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 105–06 (D. Mass. 2010) ("Given that the present case involves an ERISA § 502(a)(2) claim brought on behalf of the Plan and alleging breaches of fiduciary duty on the part of Defendants that will, if true, be the same with respect to every class member, I find that Rule 23(b)(1)(B) is clearly satisfied."); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) (same); *Stegemann v. Gannett Co.*, No.

118CV325AJTJFA, 2022 WL 17067496, at *11 (E.D. Va. Nov. 17, 2022) ("Several courts,

including this one, have held that ERISA fiduciary breach claims are appropriate for Rule 23(b)(1)

certification."); *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 80 (E.D. Va. 2006) ("Alleged

breaches by a fiduciary to a large class of beneficiaries present an especially appropriate instance

for treatment under Rule 23(b)(1)… Indeed, given the derivative nature of suits brought pursuant

to § 502(a)(2) on behalf of the Plan, 'ERISA litigation of this nature presents a paradigmatic

example of a (b)(1) class.') (quoting *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436,

453 (S.D.N.Y. 2004); *Evans v. Akers*, No. 04–11380–WGY, slip op. at 4 (D. Mass. Oct. 7, 2009)

(finding class certification appropriate under Rule 23(b)(1)(B) because "[g]iven the Plan-

representative nature of Named Plaintiffs' breach of fiduciary duty claims, there is a risk that

failure to certify the Settlement Class would leave future plaintiffs without relief"); *Stanford v.

Foamex L.P.*, 263 F.R.D. 156, 174 (E.D. Pa. 2009) ("because of the unique and representative

nature of an ERISA § 502(a)(2) suit, numerous courts have held class certification proper pursuant

to Rule 23(b)(1)(B)"); *In re Nortel Networks Corp. ERISA Litig.*, No. 3:03-MD-01537, 2009 WL

3294827, at *15 (M.D. Tenn. Sept. 2, 2009) (finding class certification appropriate under Rule

23(b)(1)(B) because "[i]f individual adjudications would be dispositive of the interests of other

Plan Participants, it would be better for those Plan Participants to be members of a class"); *Jones

v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 193 (W.D. Mo. 2009) (certifying a class under Rule

23(b)(1)(B) because "[g]iven that [named plaintiff]'s claim seeks 'Plan-wide relief, there is a risk

that failure to certify the class would leave future plaintiffs without relief' "); *In re Merck & Co.,

Inc. Sec., Derivative & ERISA Litig.*, No. CIV.A. 05-1151SRC, 2009 WL 331426, at *10 (D.N.J.

Feb. 10, 2009) (finding class certification appropriate under Rule 23(b)(1)(B) because "[i]f the

prudence claims proceeded individually, and one court removed a Plan fiduciary, this would be,

as a practical matter, dispositive of the interests of the other Plan members in that particular regard"); *In re Tyco Int'l, Ltd.*, No. MD-02-1335-PB, 2006 WL 2349338, at *7 (D.N.H. Aug. 15, 2006) ("the majority of courts have concluded that certification under 23(b)(1)(B) is proper" for ERISA fiduciary class actions).

As the above-cited cases show, the instant ERISA class action is precisely the type of case that Rule 23(b)(1) envisioned. Plaintiffs allege that the Defendants breached its fiduciary duties to the Plan and that the breach similarly affected all Plan participant and beneficiaries. The proposed Class therefore satisfies Rule 23(B)(1)(B).

**B.      The Settlement Agreement Should Be Preliminarily Approved By the Court**

"The voluntary resolution of litigation through settlement is strongly favored by the courts." *S.C. Nat. Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) (citing *Williams v. First Nat. Bank*, 216 U.S. 582 (1910)) "This policy is particularly appropriate in class actions, where "there is an overriding public interest in favor of settlement" settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources." *South Carolina Nat. Bank*, 749 F. Supp. 1419 (internal quotations and citation omitted). "Whether to preliminarily approve a proposed class action settlement lies within the sound discretion of the district court." *Curtis v. Genesis Eng'g Sols., Inc.*, No. GJH-21-722, 2022 WL 1062024, at *2 (D. Md. Apr. 8, 2022) (citation omitted). Here, as discussed more fully below, the proposed Settlement Agreement is well within the range of reasonableness, comports with Rule 23 and due process considerations, and thus, should be preliminarily approved by the Court.

### 1.    Standards and Procedures for Preliminary Approval

Under Fed. R. Civ. P. 23, the Court is to direct notice of a proposed settlement if it seems "likely" that it would give final approval of the settlement. Fed. R. Civ. P. 23(e)(1)(B). Hence, at the preliminary approval stage, the Court is required to assess whether there is "'probable cause' to submit the proposal to members of the class and to hold a full-scale hearing on its fairness." *In re American Capital Shareholder Derivative Litigation*, 2013 WL 3322294, at *3 (quoting *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983)). There must be a "basic showing" that the proposed settlement "is sufficiently within the range of reasonableness so that notice should be given." *Id*. (internal quotation marks and ellipsis omitted). The court makes "a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms" and "direct[s] the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id*. (quoting Manual for Complex Litigation (Fourth), §21.632 (2004)).

There are two primary prongs to the preliminary assessment of a class action settlement: fairness and adequacy. *Id*. The fairness prong focuses on the procedural propriety of the proposed settlement, while the adequacy prong focuses on "substantive propriety." *Id*.

### 2.    The Settlement Prong Satisfies the Fairness Prong for Preliminary Approval

The court considers the following factors in assessing the procedural fairness of the proposed settlement:

> [1] whether the proposed settlement is the product of good faith bargaining at arm's length; [2] the posture of the case at settlement; [3] the extent and sufficiency of discovery conducted; [4] counsel's experience with similar litigation and their relevant qualifications; and [5] any pertinent circumstances surrounding the negotiations.

*Id*. These factors support preliminary approval here.

a.    __Negotiations Occurred at Arm's Length__

The Settlement was the result of extensive arm's length negotiations, conducted before a mediator and by experienced counsel for all the parties, following specific claims-related discovery and contentious litigation. The parties' negotiations included a full day of mediation facilitated by an experienced mediator, and the exchange of information. A presumption of fairness exists where parties negotiate at arm's length with the assistance of a mediator. *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 830 (E.D.N.C. 1994); *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001); *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, No. CV JKB-16-3025, 2019 WL 3183651, at *5 (D. Md. July 15, 2019) ("reliance on a neutral mediator experienced in complex litigation [or a court-affiliated mediator], indicate the Settlement is fair and that it should be approved").

Through the course of negotiations, Class Members were represented by attorneys who have considerable experience and success in prosecuting and settling class actions, have been vigorously prosecuting this and other cases for similar claims for several years, and therefore, were well versed in the issues and how to evaluate the claims. Defendants were similarly represented by counsel experienced in class action litigation. Courts recognize that the opinion of experienced counsel supporting a settlement is entitled to considerable weight. *See*, *e.g.*, *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."); *All. To End Repression v. City of Chicago*, 561 F. Supp. 537, 548 (N.D. Ill. 1982) ("Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel."). Here, proposed Lead Class Counsel – two law firms that are nationwide leaders in class action litigation, including ERISA litigation– have made a considered judgment

based on adequate information derived from meaningful discovery that the Settlement is not only fair and reasonable, but a favorable result for the Class. Class Counsel's beliefs are based on their deep familiarity with the factual and legal issues in this case and the risks associated with continued litigation. This further weighs in favor of the fairness of the settlement. *See* 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 11:41 (4th ed. 2010) (noting that courts usually adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval").

### b.    There Has Been Sufficient Discovery

Proposed Class Counsel obtained sufficient discovery to enter into the proposed Settlement on a fully informed basis. Following the Court's denial of Defendants' Motion for Partial Dismissal, the parties entered into settlement discussions, and Plaintiffs requested and obtained significant information from Defendants, which Plaintiffs carefully reviewed. Plaintiffs' counsel's analysis reflected the input of expert consultants, including with respect to losses suffered by the Plan and the Class Members.

Based on this discovery, Class Counsel gained an understanding of both the strengths and weaknesses of Plaintiffs' claims. In particular, liability in this case is contested, and both sides would face considerable risks were the litigation to proceed. In contrast to the complexity, delay, risk, and expense of continued litigation, the proposed Settlement will produce certain, and substantial, recovery for the Settlement Class.

Plaintiffs faced a risk that they would be unable to establish the Defendants' liability, and, if able to do so, they faced the further risk that a trier of fact would find no damages or damages that were less than the $3.25 million achieved by means of the Settlement. In light of these risks, Plaintiffs and their counsel believe the Settlement represents a favorable outcome for the

Settlement Class. The Settlement will avoid the cost and expense of continued litigation and will achieve immediate relief for the Settlement Class.

While it is important to remember that "settlement is a compromise," the proposed Settlement is reasonable and confers a substantial benefit on the Settlement Class, particularly given the inherent risks of continued litigation. As described above, each Class Member will receive a portion of the Settlement Amount. *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 259 (3d Cir. 2009) (noting that a settlement that would eliminate delay and expenses and provides immediate benefit to the settlement class strongly militates in favor of settlement approval).

**c.**    **The Proponents of the Settlement Are Experienced in Similar Litigation**

As set forth in greater detail below and in the declaration appended to this motion, proposed Class Counsel are highly experienced and skilled in handling complex class actions, and in particular, ERISA class actions. Proposed Class Counsel have served in leadership positions in numerous ERISA class actions and have successfully obtained meaningful recoveries for retirement plan participants through class litigation. Accordingly, this factor strongly supports granting preliminary approval. *See In re Jiffy Lube Sec. Litig.*, No. CIV. Y-89-1939, 1990 WL 39127, at *7 (D. Md. Jan. 2, 1990) (finding co-lead counsel were "eminently well-qualified and experienced" in the area of law at issue, resulting in the informed and realistic assessment of the benefits of settlement).

Accordingly, this Circuit's standards for preliminary approval of the settlement have been established. Namely, the Settlement was negotiated at arm's length by counsel highly experienced in similar litigation and following sufficient discovery. Thus, this Court should grant preliminary approval so the proposed Class may be certified for Settlement purposes, Class Counsel may be

appointed, and the Class Notice may be mailed. Once the Class Notice process is complete, the Court can then fully evaluate the fairness and adequacy of the Settlement at a Final Approval hearing.

### 3.    The Settlement Prong Satisfies the Adequacy Prong for Preliminary Approval

The court considers the following factors in assessing the substantive adequacy of the proposed settlement:

> [1] the relative strength [and weaknesses] of the plaintiffs' case on the merits…; [2] the cost of additional litigation; [3] defendants' ability to pay a judgment; and [4] any opposition to the settlement

*In re American Capital Shareholder Derivative Litigation*, 2013 WL 3322294, at *3 (internal quotation marks and citations omitted). These factors support preliminary approval.

### a.    The Strength and Weaknesses of Plaintiffs' Case Support Approval

As discussed above, liability in this case is contested, and both sides would face considerable risks were the litigation to proceed. In contrast to the complexity, delay, risk, and expense of continued litigation, the proposed Settlement will produce certain, and substantial, recovery for the Settlement Class.

Plaintiffs faced a risk that they would be unable to establish the Defendants' liability, and, if able to do so, they faced the further risk that a trier of fact would find no damages or damages that were less than the $3.25 million achieved by means of the Settlement. In light of these risks, Plaintiffs and their counsel believe the Settlement represents a favorable outcome for the Settlement Class. The Settlement will avoid the cost and expense of continued litigation and will achieve immediate relief for the Settlement Class.

While it is important to remember that "settlement is a compromise," the proposed Settlement is reasonable and confers a substantial benefit on the Settlement Class, particularly

given the inherent risks of continued litigation. As described above, each Class Member will receive a portion of the Settlement Amount. *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 259 (3d Cir. 2009) (noting that a settlement that would eliminate delay and expenses and provides immediate benefit to the settlement class strongly militates in favor of settlement approval).

### b.    The Cost of Additional Litigation Supports Preliminary Approval

The costs of class certification briefing, summary judgment briefing, and a trial itself would have been expensive. Costs include time spent briefing the motions, as well as weeks of preparation and trial time for multiple attorneys and their staff, preparation of evidentiary exhibits, creation of demonstrative exhibits, and preparation, travel, and trial time for the three experts on each side. Avoiding the cost and expense of a lengthy trial and a likely appeal – which might well have resulted in a judgment adverse to, and with no relief awarded to, the Class – also supports preliminary approval.

### c.    Other Factors

Other factors noted by courts are not material in this case and/or at this stage. Defendant is a large corporation and is obviously able to pay any judgment. Class Notice has not yet been issued, so it is not known whether there will be objections to the proposed settlement.

### C.    The Court Should Appoint Plaintiffs' Counsel as Class Counsel

Fed. R. Civ. P. 23(g) requires a court to appoint class counsel. In appointing class counsel, the Court "must" consider:

- the work counsel has done in identifying or investigating potential claims in the action;

- counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

- counsel's knowledge of the applicable law; and

- the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). The court "may" also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Proposed Class Counsel, Edelson Lechtzin LLP, Tycko & Zavarelli LLP, and McKay Law, LLC, satisfy these criteria. These firms' lawyers expended a great deal of time, effort and expense investigating the Defendants' documents, practices, and actions prior to and since filing this action. Further, as set forth in the declarations submitted herewith, proposed Class Counsel are highly experienced in ERISA and other complex class action litigation. *See* Declaration of Eric Lechtzin ("Lechtzin Decl.") and Declaration of Michael McKay ("McKay Decl."). It is clear from proposed Class Counsel's track records of success that proposed they are highly skilled and knowledgeable concerning ERISA law and class action practice.

As can be seen by their commitment to prosecuting this case thus far as well as their track record, Class Counsel have made the investment and have the experience to represent the Class vigorously. Accordingly, the appointment of the proposed Class Counsel under Rule 23(g) is warranted.

### D.    The Proposed Class Notice Program Should Be Approved

Under the Settlement Agreement, the Settlement Administrator will send individualized Class Notices via first-class U.S. Mail to Class Members. Courts have considerable discretion in approving an appropriate notice plan. *See Manual for Complex Litig.* § 21.311 ("Determination of whether a given notification is reasonable under the circumstances of the case is discretionary.") The manner in which these Class Notices are disseminated, as well as their content, must satisfy Rule 23(c)(2) (governing class certification notice), Rule 23(e)(1) (governing settlement notice),

and due process. *See Zimmer Paper Prod., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90–91 (3d Cir. 1985); *Grunewald v. Kasperbauer*, 235 F.R.D. 599, 609 (E.D. Pa. 2006). These requirements are adequately satisfied here.

As set forth in the proposed Preliminary Approval Order (attached as Exhibit C to the Settlement Agreement), Class Counsel and the Settlement Administrator will cause the Settlement Class to be notified of the pendency of the Action and the proposed Settlement by mailing the Settlement Notice to all Members of the Settlement Class identified by Defendants based on their records. The Settlement Administrator will also establish a website related to the Settlement in this case and the Notice shall be featured on it. This procedure is designed to reach as many Members of the Settlement Class as reasonably practicable. The Settlement Notice informs the Settlement Class of the Nature of the Action, the definition of the Class, a detailed summary of the terms of the Settlement (including the relief provided and the scope of the Release), a summary of the proposed Plan of Allocation, the binding nature of the Settlement on Members of the Settlement Class, and the intent of Class Counsel to seek an award of attorney's fees and reimbursement for their litigation expenses. It also informs Members of the Settlement Class how and when to file objections to the proposed Settlement, the motion for attorney's fees and expenses, and/or the request for Plaintiff Case Contribution Awards, and it states the date, time and place of the Settlement hearing.

The form and manner of providing notice to the Class satisfies all the requirements of Rule 23 and due process. A settlement must provide adequate notice to the Settlement Class so that each Member can make an informed choice about whether to object or participate without objection. Rule 23(e)(1) provides that, in the event of a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" the proposed settlement. Fed.

R. Civ. P. 23(e)(1). To satisfy due process, the notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). *Snider Int'l Corp. v. Town of Forest Heights, Md.*, 739 F.3d 140, 146 (4th Cir. 2014) (citation omitted) (Due process does not require that each person affected by judicial action actually receive notice of a proposed settlement, but does require that "a serious effort" be made to inform interested parties.); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974) ("Individual notice must be provided to those class members who are identifiable through reasonable effort.")

The notice program set forth in the proposed Preliminary Approval Order meets these standards: it provides the best practicable notice under the circumstances and is reasonably calculated to reach substantially all members of the Class. Settlement Notices will be directly mailed to all Members of the Settlement Class identified from Defendants' records and that mailing will be supplemented by publication on the Settlement website. The Proposed Class Notice is clear, accurate, and satisfies due process.

Accordingly, the proposed Class Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. *See*, *e.g.*, 4 Newberg on Class Actions (Fourth) §§ 8.21, 8.39; *Manual for Complex Litig.* (Fourth) §§ 21.311-21.312. The proposed Class Notice should be approved for dissemination to the Class Members.

In addition, Plaintiffs request that the Court approve American Legal Claim Services, LLC, which has extensive experience administering ERISA and other class action settlements, as Settlement Administrator.

E.    **Proposed Schedule of Events**

The schedule of events under the terms of the Settlement Agreement and proposed Preliminary Approval Order is set forth in the table below:

| EVENT | DATE | SETTLEMENT AGREEMENT OR ORDER IF APPLICABLE |
|---|---|---|
| Motion for Preliminary Approval | December 11, 2023 | |
| Defendant will cause the Settlement Administrator to send CAFA notices | 10 calendar days after the filing of Plaintiff's Motion for Preliminary approval | ¶ 2.5 |
| Entry of Preliminary Approval Order | To be determined by Court | N/A |
| Defendant to provide information needed for Class Notice to Settlement Administrator | Within a reasonable time after the Preliminary Approval Order is issued | ¶ 8.2 |
| Defendant to pay $100,000 to Class Counsel for initial Settlement Administration Expenses | Within 30 calendar days after the later of the date the Preliminary Approval Order is entered or the date the Qualified Settlement Fund is established with the Settlement Administrator | ¶ 4.4 |
| Mailing of Notice to the Settlement Class | By date established in the Preliminary Approval Order | ¶ 2.4 |
| Deadline for Settlement Class Members to Object | 30 calendar days prior to the Final Fairness Hearing | Preliminary Approval Order |
| Deadline for Settlement Class Members to Request to Appear at Final Fairness Hearing | 15 calendar days prior to the Final Fairness Hearing | Preliminary Approval Order |
| Plaintiffs' Motion for Final Approval | 45 calendar days before the Final Fairness Hearing | ¶ 3.1 |

| EVENT | DATE | SETTLEMENT AGREEMENT OR ORDER IF APPLICABLE |
|---|---|---|
| Plaintiffs' Motion for Approval of Attorneys' Fees and Costs and Plaintiffs' Application for Service Awards | Class Counsel will file a motion for an award of Attorneys' Fees and Costs no later than forty-five (45) calendar days before the date of the Final Fairness Hearing specified in the Preliminary Approval Order | ¶¶ 6.1, 6.2 |
| Independent Fiduciary to notify Defendant directly of its determination, in writing (with copies to Class Counsel and Defense Counsel); Independent Fiduciary determination letter and report to be provided to Class Counsel | No later than ten (10) calendar days after Class Counsel file their application for attorney's fees and costs with the United States District Court. Additionally, a copy of the Independent Fiduciary determination letter and report shall be provided to Class Counsel, who may file it with the Court in support of Final approval of the Settlement | ¶¶ 2.1.2, 2.1.6 |
| Final Fairness Hearing | No sooner than 120 days after entry of the Preliminary Approval Order | ¶ 2.2.6 |
| Entry of Final Approval Order | To be determined by Court | N/A |
| Defendant to deposit remaining Settlement Funds into the Settlement Account | Within 30 business days after the Settlement Effective Date | ¶ 4.5 |

## F.  A Final Fairness Hearing Should Be Scheduled

Plaintiffs' Counsel moves the Court to schedule a Final Fairness Hearing, as contemplated by Rule 23, to determine that final approval of the Settlement is warranted and proper. *See* Fed. R. Civ. P. 23. Such hearing will provide a forum to explain, describe or challenge the terms and conditions of the Settlement, including the fairness, adequacy, and reasonableness of the

Settlement Agreement. Additionally, Class Counsel will present their application for their fees and reasonable expenses pursuant to Rule 23(h), as well as the Plaintiffs' Case Contribution Awards. To ensure ample time for Class Notice to be mailed and considered by Class Members, the Court should schedule such hearing for a date at least one hundred and twenty (120) days from the date the Court enters an Order granting preliminary approval.

## IV.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Unopposed Motion and enter the proposed Preliminary Approval Order.

Dated: December 10, 2023                              Respectfully submitted,

                                                     EDELSON LECHTZIN LLP


                                                     */s/Eric Lechtzin*
                                                     Eric Lechtzin (PA I.D. 62096)
                                                     Marc H. Edelson (PA I.D. 51834)
                                                     411 S. State Street, Suite N-300
                                                     Newtown, PA 18940
                                                     Telephone: (215) 867-2399
                                                     elechtzin@edelson-law.com
                                                     medelson@edelson-law.com

                                                     MCKAY LAW, LLC
                                                     Michael C. McKay*
                                                     5635 N. Scottsdale Road, Suite 117
                                                     Scottsdale, AZ 85250
                                                     Telephone: (480) 681-7000
                                                     mmckay@mckaylaw.us

                                                     TYCKO & ZAVAREEI LLP Andrea Gold
                                                     (Bar No. 18656)
                                                     2000 Pennsylvania Avenue NW
                                                     Suite 1010
                                                     Washington, DC 20036
                                                     Telephone: (202) 973-0900
                                                     agold@tzlegal.com

                                                     *Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2023, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

*/s/Eric Lechtzin*
Eric Lechtzin